■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEPHEN A. WEEKES, Appellant. [860 NYS2d 278]—

Kavanagh, J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered August 3, 2006, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the third degree.

At approximately 6:25 P.M. on June 22, 2005, Sergeant Christopher Bracco, a supervisor assigned to the street level Drug Interdiction Unit of the Binghamton Police Department, was in a marked patrol car when he saw defendant and another individual walking toward the rear of a building that had been targeted by the police department as the focus of increased criminal activity. Bracco drove to the rear of the building where he found defendant among a group of people gathered on a rear porch. Defendant approached Bracco's vehicle and told the officer that an unidentified individual had stolen $5 from him and had run inside the building. Bracco questioned the other individuals on the porch, all of whom denied seeing anyone take any property from defendant. Based on that information, Bracco concluded that defendant had filed a false complaint about being a victim of a theft and radioed police headquarters for assistance.

Bracco continued to question defendant about the alleged theft and asked him for identification. Defendant produced a driver's license, which listed a Brooklyn address, as well as an appearance ticket indicating that defendant had been arrested the previous day in the City of Binghamton, Broome County, for providing a police officer with a false address, and he was charged with false personation. Bracco's suspicions grew, and defendant, while continuing to insist that money had been stolen from him, ultimately admitted that he was at that location to buy marihuana. Bracco then asked defendant for permission to search him and defendant consented.* During the search, which was limited to a pat down of defendant's clothing and an examination of his pants pockets, the officer noticed that defendant would back away when he sought to examine defendant's waist area. No contraband was found. Defendant was then placed in the back of the patrol vehicle and driven to the address that he had provided so the officers could verify that the address was his. Defendant asked for permission to meet the officers at this location, rather than being transported by the officers, but they insisted that he go with them in the patrol car. Defendant was not handcuffed. When they arrived at the address, a resident told the officers that defendant had spent a night at that location but did not reside there. At that point, defendant was removed from the rear of the patrol vehicle and handcuffed and the officers searched the backseat area where defendant had been sitting. Beneath the head rest, the officers found two knotted corner wraps containing more than one eighth of an ounce of cocaine. Defendant was arrested and subsequently indicted for the crimes of criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree, falsely reporting an incident in the third degree and false personation.

Defendant moved to suppress the cocaine found in the patrol vehicle. After a suppression hearing, County Court concluded that the police officers had taken custody of defendant when they had initially placed him in the patrol car and, at that moment, had probable cause to arrest him for the crime of falsely reporting an incident. Based on that determination, the court found that the cocaine had been seized as an incident to a lawful arrest and denied defendant's motion to suppress. Thereafter, defendant pleaded guilty to the crime of criminal possession of a controlled substance in the third degree, in full satisfaction of all charges contained in the indictment, but did not waive his right to appeal. Defendant was sentenced as a second felony of-

* Defendant later refused to allow the police to conduct a strip search.

fender to a prison term of 3½ years, with 1½ years of postrelease supervision. Defendant now appeals.

Initially, we agree with County Court that the police took custody of defendant when they placed him in the patrol car at the outset of their inquiry into the reported theft. However, we find merit to defendant's argument that the circumstances surrounding the police taking defendant into custody did not provide probable cause to believe that defendant had falsely reported an incident (*see* CPL 140.10; *People v Carrasquillo*, 54 NY2d 248, 253-254 [1981]). When defendant was placed in the police car, Bracco had no more than a suspicion, and certainly less than probable cause, to have inferred that defendant had committed a crime (*see People v Brown*, 32 NY2d 172, 174 [1973]). The fact that none of the people on the rear porch admitted to witnessing this event as described by defendant did not mean that the theft had not occurred and did not provide Bracco with probable cause to believe that defendant had in fact falsely reported an incident.

Bracco, when he first saw defendant, observed him with another individual who had not been identified. Prior to placing defendant in the patrol car, no effort was made to identify this individual, nor was any attempt made to search the building to verify defendant's claim (*see People v Carrasquillo*, 54 NY2d at 252). Moreover, there appears to be no reason for defendant to have fabricated this claim nor anything in his actions after that point that would have given Bracco reasonable cause to believe that defendant had committed that crime. In fact, while defendant admitted to being in the area to purchase marihuana, not once did he renounce his claim that money had been stolen from him and that he had been the victim of a crime (*see People v Wharton*, 60 AD2d 291, 295 [1977], *affd* 46 NY2d 924 [1979], *cert denied* 444 US 880 [1979]). Accordingly, we must conclude that defendant's arrest was without a legal basis.

However, suppression of the cocaine was not required here because defendant's actions in placing the cocaine behind the headrest of the police car constituted an abandonment by him of any possessory interest in the contraband as well as the loss of any expectation of privacy that he may otherwise have had in terms of the location of this property (*see People v Ramirez-Portoreal*, 88 NY2d 99, 110 [1996]; *People v Boodle*, 47 NY2d 398, 404 [1979], *cert denied* 444 US 969 [1979]). And the fact that he was illegally detained at the time this cocaine was found in the rear of the patrol car does not command a different result. Even if illegally detained, a defendant would still be deemed to have abandoned property if it "was discarded as the product of

an independent, calculated act on the part of the defendant rather than the direct result of illegal police conduct intended to induce the defendant to reveal the evidence in question" (*People v Riddick*, 224 AD2d 782, 783 [1996]; *see People v Lopez*, 266 AD2d 735, 737 [1999], *lv denied* 94 NY2d 922 [2000]). When the officers left defendant in the patrol car to question the residents at the address he provided, defendant made the calculated and purposeful decision to discard the evidence (*see People v Boodle*, 47 NY2d at 404; *People v Jackson*, 251 AD2d 820, 823 [1998], *lv denied* 92 NY2d 926 [1998]). He had sufficient time during the period that he was in the rear of the patrol car "to make a choice, as the result of thought and reflection, and to act upon the choice thus made" (*People v Boodle*, 47 NY2d at 404). Defendant's decision to voluntarily discard the contraband and leave it in the patrol car forfeited any expectation of privacy that he might otherwise have had (*see People v Riddick*, 224 AD2d at 783). Since, when found by the police, the cocaine was abandoned property, it was not illegally seized and defendant's motion to suppress it was properly denied.

Mercure, J.P., Peters, Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed.