Egan Jr., J.
 

 Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered November 18, 2015, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree (two counts) and criminal possession of a weapon in the third degree.
 

 In September 2014, the City of Albany Police Department commenced an investigation into defendant upon receipt of a complaint from a female victim that he had approached her in a motor vehicle and threatened her with a firearm. The victim identified defendant in a photo array and provided the police with a description of defendant’s vehicle. Shortly thereafter, police located defendant’s vehicle, executed a traffic stop and took defendant into custody for certain charges resulting from the stop. While defendant remained in custody, detectives successfully applied for and executed a search warrant on defendant’s first-floor apartment located at 202 Jefferson Street in the City of Albany wherein they seized, among other things, a semiautomatic pistol and a Taurus .38 revolver. As a result, defendant was ultimately charged in a four-count superceding indictment with two counts of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and menacing in the second degree.
 

 Defendant thereafter moved to suppress the seized weapons on the ground that the search warrant was defective inasmuch as it failed to describe with sufficient particularity the premises to be searched. Following a hearing, County Court denied the motion. Defendant then sought a judicial subpoena duces tecum ordering the Albany Police Department to produce, among other things, the personnel records of Scott Gavigan, a detective involved in the search of defendant’s residence. The City of Albany thereafter moved to quash the subpoena and, following a hearing, County Court granted the motion. Following a jury trial, defendant was convicted of two counts of criminal possession of a weapon in the second degree and one count of criminal possession of a weapon in the third degree. Defendant’s motion to set aside the verdict pursuant to CPL 330.30 (1) was subsequently denied and he was thereafter sentenced, as a second violent felony offender, to 15 years in prison to be followed by five years of postrelease supervision for each conviction of criminal possession of a weapon in the second degree and a concurrent prison sentence of 3V2 to 7 years on the conviction for criminal possession of a weapon in the third degree. Defendant now appeals and we affirm.
 

 Initially, we are unpersuaded by defendant’s contention that the search warrant executed on his residence was fatally defective for failing to describe the premises to be searched with sufficient particularity. While particularity of a search warrant is certainly required, “[t]his does not mean that hypertechnical accuracy and completeness of description must be attained but rather, from the standpoint of common sense, that the descriptions in the warrant and its supporting affidavits be sufficiently definite to enable the searcher to identify the persons, places or things that the Magistrate has previously determined should be searched or seized” (People v Nieves, 36 NY2d 396, 401 [1975] [citations omitted]; accord People v Carpenter, 51 AD3d 1149, 1149-1150 [2008], lv denied 11 NY3d 786 [2008]). Here, the search warrant directed police officers to search “ [t]he residence of 202 Jefferson Street, Albany, NY, to include all stairways, attics, basements, yards and sheds” and specified that the residence was a “two-story brickfront apartment duplex building with a blue door.” Although the warrant was facially deficient to the extent that it failed to specify whether detectives were to search the upstairs or downstairs apartment of the two-unit duplex (see e.g. People v Mitchell, 57 AD3d 1232, 1233 [2008], lv denied 12 NY3d 760 [2009]; People v Henley, 135 AD2d 1136, 1136 [1987], lv denied 71 NY2d 897 [1988]), the imprecise description did not invalidate the search inasmuch as the affidavit in support of the search warrant specifically identified the apartment to be searched as “[defendant’s] residence” (see People v Wallace, 238 AD2d 807, 808-809 [1997], lv denied 90 NY2d 865 [1997]; People v Davenport, 231 AD2d 809, 810 [1996], lv denied 89 NY2d 921 [1996]) and, upon execution, the detectives were able “to readily ascertain and identify the target premises with reasonable and minimal effort” (People v Mitchell, 57 AD3d at 1233; see People v Lavin, 220 AD2d 886, 887 [1995], lv denied 87 NY2d 904 [1995]; People v Fahrenkopf, 191 AD2d 903, 903 [1993]).
 
 *
 
 Nor do we find that the police officer’s use of defendant’s key to enter the residence otherwise rendered the search invalid (see generally People v Binns, 299 AD2d 651, 652-653 [2002], lv denied 99 NY2d 612 [2003]).
 

 We likewise find no error in County Court granting the City’s motion to quash a judicial subpoena duces tecum directing the Albany Police Department to disclose Gavigan’s personnel record. “The personnel records of police officers, including documents pertaining to misconduct or violations of rules, are confidential and are not subject to inspection or review . . . ‘except as may be mandated by lawful court order’ ” (People v Johnson, 150 AD3d 1390, 1391 [2017], lv denied 29 NY3d 1128 [2017], quoting Civil Rights Law § 50-a [1]). Accordingly, it is the burden of the party seeking disclosure to demonstrate some good faith, factual predicate warranting the intrusion (see People v Darrell, 145 AD3d 1316, 1319 [2016], lv denied 29 NY3d 1125 [2017]; People v Harris, 121 AD2d 788, 789 [1986], lv denied 68 NY2d 770 [1986]).
 

 Here, the allegations set forth in defense counsel’s supporting affidavit failed to establish any good faith, factual basis supporting the request for a subpoena and, instead, constituted the consummate fishing expedition for collateral materials to be used for impeachment purposes (see People v Darrell, 145 AD3d at 1319; see also People v Gissendanner, 48 NY2d 543, 550-551 [1979]; Matter of Dunnigan v Waverly Police Dept., 279 AD2d 833, 834 [2001], lv denied 96 NY2d 710 [2001]). In any event, County Court indicated that it had conducted an in camera review of Gavigan’s personnel file and discovered nothing that could be used to impeach his credibility. Nor do we find that County Court abused its discretion in limiting cross-examination of Gavigan with regard to such collateral matters (see People v Serrano-Gonzalez, 146 AD3d 1013, 1015 [2017], lv denied 29 NY3d 952 [2017]; People v Williamson, 77 AD3d 1183, 1184-1185 [2010]; see also People v Cato, 5 AD3d 394, 394 [2004], lv denied 2 NY3d 797 [2004]).
 

 Next, defendant’s contention that County Court erred in denying his Batson challenge is unavailing. Pursuant to the three-step Batson framework, the moving party bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges (see People v Hecker, 15 NY3d 625, 634 [2010], cert denied 563 US 947 [2011]; People v Smocum, 99 NY2d 418, 420 [2003]; People v Morris, 140 AD3d 1472, 1476 [2016], lv denied 28 NY3d 1074 [2016]). Upon making a prima facie case of discrimination, the burden shifts “to the nonmoving party to provide a race-neutral explanation for the removal of the prospective juror” (People v Anthony, 152 AD3d 1048, 1049-1050 [2017] [internal quotation marks and citation omitted]). Here, defendant’s initial Batson objection was raised after the People used peremptory challenges to remove the only two African Americans from the first jury panel. The People, however, provided sufficient facially neutral explanations for each of the challenged jurors. The People explained that juror No. 2 was challenged because, among other things, her father worked in a correctional facility and she had an ex-boyfriend who had been convicted of a robbery (see People v Acevedo, 141 AD3d 843, 846 [2016]). The People indicated that they challenged juror No. 11 because, among other things, he had made statements indicating a possible inability to follow the law and based upon his involvement in the ministry. Upon further inquiry, County Court denied the motion, indicating that the challenges were not pretextual (see People v Green, 141 AD3d 1036, 1040 [2016], lv denied 28 NY3d 1072 [2016]). Further, to the extent that defendant renewed his Batson challenge following the third round of jury selection by stating, in conclusory fashion, that he “renew [ed] [his] Batson challenge,” he “failed to articulate any other facts or relevant circumstances to establish a prima facie case of discrimination [; accordingly,] the burden did not shift to the People to offer a facially neutral explanation for the challenge” (People v Anthony, 152 AD3d at 1050; see People v Hunt, 50 AD3d 1246, 1247 [2008], lv denied 11 NY3d 789 [2008]).
 

 We also find unavailing defendant’s contention that he was deprived of a fair trial as a result of various instances of prosecutorial misconduct during the People’s summation. Although defendant argues that the prosecutor impermissibly shifted the burden of proof on multiple occasions, the record reflects that County Court sustained many of defendant’s objections in this regard and, where appropriate, issued timely curative instructions, reminding the jury that the People alone carried the burden of proving defendant’s guilt beyond a reasonable doubt (see People v Ressy, 141 AD3d 839, 842-843 [2016], lv denied 28 NY3d 1030 [2016]). Further, inasmuch as the challenged comments largely constituted a fair comment on the evidence or were responsive to statements made by defense counsel during summation, we find that the cumulative effect of the challenged comments was not so prejudicial as to deny defendant his fundamental right to a fair trial (see People v Scippio, 144 AD3d 1184, 1187-1188 [2016], lv denied 28 NY3d 1150 [2017]).
 

 Finally, with respect to defendant’s claim that his sentence is harsh and excessive, we find no extraordinary circumstances or any abuse of discretion warranting a reduction of the sentence in the interest of justice (see People v Malloy, 152 AD3d 968, 971 [2017]). “The mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations is not proof positive that defendant was punished for asserting his right to trial” (People v Peart, 141 AD3d 939, 942 [2016] [internal quotation marks and citations omitted], lv denied 28 NY3d 1074 [2016]; see People v Watson, 150 AD3d 1384, 1387 [2017], lv denied 29 NY3d 1135 [2017]). In consideration of the nature of the crime and defendant’s criminal history, which included a prior felony conviction for a weapon charge, we discern no basis upon which to reduce the sentence imposed (see People v Criss, 151 AD3d 1275, 1281 [2017]; People v Dale, 115 AD3d 1002, 1007 [2014]).
 

 Garry, J.P., Devine, Aarons and Rumsey, JJ., concur.
 

 Ordered that the judgment is affirmed.
 

 *
 

 Specifically, while executing the search warrant, detectives knocked on the door of the upstairs unit of the duplex and were informed by its occupant that it was not defendant’s residence. In turn, detectives did not search the upstairs unit. This reasonable and minimal inquiry at the site served to verify the location of defendant’s residence and alleviate any confusion over which unit was authorized to be searched (see People v Lopez, 266 AD2d 735, 736-737 [1999], lv denied 94 NY2d 922 [2000]).